UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLAYTON M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-CV-799-ACL |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Clayton M. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he was capable of performing work existing in significant numbers in the national economy. This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

## I. Procedural History

Plaintiff filed his application for benefits on November 28, 2022. (Tr. 721-29.) He claimed he became unable to work due to diverticulitis and neurodermatitis. (Tr. 723, 749.) Plaintiff was 49 years of age on his alleged onset of disability date. *Id.* His application was denied initially and on reconsideration. (Tr. 639-43, 650-53.) On November 12, 2024, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 583-92.) The Appeals Council denied Plaintiff's claim for review. (Tr. 1-6.) Thus, this decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ "failed to properly consider the medical opinions." (Doc. 14 at 2.) Plaintiff next argues that the "RFC is not supported by substantial evidence." *Id.* at 7.

## II. The ALJ's Determination

The ALJ first found that Plaintiff has not engaged in substantial gainful activity since November 28, 2022, the alleged onset date. (Tr. 585.) Next, the ALJ concluded that Plaintiff had the following severe impairments: a history of diverticulitis with ongoing ostomy prolapse; neurodermatitis; and medial and lateral epicondylitis with non-union of remote fractures of the right elbow. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 587.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds.

> The claimant can perform occasional balancing on narrow, slippery, or erratically moving surfaces. He can engage in occasional stooping, kneeling, crouching but no crawling. With the right dominant upper extremity, the claimant can engage in frequent reaching in front and laterally, but he cannot perform overhead work. The claimant can engage in frequent fine and gross manipulation with the right dominant upper extremity. The claimant cannot work at unprotected heights or around hazardous machinery, and he cannot perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices.

(Tr. 588.)

The ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy, such as cleaner, hand packer, and production worker. (Tr. 592.) She concluded that Plaintiff was, therefore, not under a disability from his alleged onset date through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on November 28, 2022, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's impairments.
6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

As noted above, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence and Plaintiff's RFC. The undersigned will discuss Plaintiff's claims in turn.

### A. Opinion Evidence

Plaintiff argues that the ALJ failed to properly evaluate the opinions of treating physician William Summers, M.D.; and of state agency physicians Steven Fishburn, M.D., and James Weiss, M.D.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a

medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

**1. Dr. Summers**

Dr. Summers completed a Physical Limitations Questionnaire on August 14, 2024. (Tr. 970-71.) He listed Plaintiff's diagnoses as right elbow fracture, colostomy, and depression; his physical[2] symptoms as pain and decreased mobility of the right arm; and clinical findings as decreased range of motion of the right elbow. (Tr. 970.) Dr. Summers found that Plaintiff could occasionally and frequently lift ten pounds; had no standing or walking limitations; and had no limitations with regard to his left upper extremity; but could not reach, handle, or finger for any length of time on his right. (Tr. 970-71.) Dr. Summers further found that Plaintiff's

[2] The ALJ found that Plaintiff's mental impairments were non-severe and Plaintiff does not challenge this finding. As such, the undersigned's discussion of the medical evidence will be limited to his physical impairments.

pain or other symptoms would cause him to be late, leave work early, or be absent from work every day. (Tr. 971.)

The ALJ found Dr. Summers' opinion "not persuasive." (Tr. 590.) She stated that Dr. Summers' own treatment records show Plaintiff had normal sensation and full motor strength throughout. The ALJ further noted that the consultative exam revealed right upper extremity deficits, but only mildly weak grip and bicep/tricep deficits, and "'[f]ine and gross motor fully intact.'" (Tr. 591, 856.) She concluded that, given the "totality of the evidence, the light limits with reaching, handling, and fingering limits on the right is sufficient to accommodate his elbow condition." (Tr. 591.)

The undersigned finds the ALJ adequately considered the persuasiveness of Dr. Summers' opinion by discussing its supportability and consistency. As to supportability, the ALJ specifically noted that Dr. Summers' own treatment notes showed Plaintiff had normal sensation and full motor strength throughout. Additionally, the ALJ provided a detailed summary of Dr. Summers' treatment notes earlier in her opinion.

The ALJ noted that Plaintiff first saw Dr. Summers on February 21, 2024, to establish care with a new primary care physician. (Tr. 589, 897.) Plaintiff had not seen a physician "in a couple years" due to reported loss of insurance. (Tr. 897.) He had a history of diverticulitis with rupture, leading to a partial colectomy and colostomy. *Id.* Plaintiff had never had a colostomy takedown due to lack of insurance, and reported being interested in having the procedure at the present time. *Id.* Plaintiff reported chronic right elbow pain after suffering a "karate injury years ago." *Id.* He had never undergone x-rays or seen an orthopedist for the injury. *Id.* Plaintiff was taking no medications at that time. *Id.* He reported smoking one to two packs per day of tobacco and using marijuana. (Tr. 898.) On examination, Plaintiff was

thin, disheveled, and in no acute distress. *Id.* Examination of the extremities revealed no cyanosis, clubbing, or edema. *Id.* It revealed a bony deformity of the right elbow with decreased range of motion and a large effusion. *Id.* Plaintiff's radial and dorsalis pedis pulses were normal bilaterally, his gait was normal, his cranial nerve exam was normal bilaterally, his reflexes were normal, he had full motor strength throughout, and his sensory exam was grossly normal. *Id.* Dr. Summers referred Plaintiff back to BJC general surgery for consideration of a colostomy takedown. (Tr. 900.) Regarding his right elbow pain, Dr. Summers noted Plaintiff appeared to have a chronic injury with swelling and decreased range of motion. *Id.* He ordered x-rays, followed by a likely referral to an orthopedist. *Id.*

The ALJ stated that Plaintiff next saw Dr. Summers on March 27, 2024, for a one-month follow-up. (Tr. 589, 894.) He reported he had changed his mind about having the colostomy takedown procedure and canceled the appointment with the general surgeon. *Id.* He had not undergone x-rays of his right elbow. *Id.* Dr. Summers' findings remained unchanged on examination. (Tr. 895.) Dr. Summers again referred Plaintiff for x-rays of the right elbow and to orthopedics. *Id.*

Plaintiff saw Dr. Summers for a third time on June 26, 2024. (Tr. 590, 891.) Dr. Summers noted that Plaintiff had undergone x-rays that revealed a non-union fracture, large effusion, and bony callouses. (Tr. 891.) Dr. Summers had referred Plaintiff to an orthopedist, but Plaintiff "has made no effort to schedule." *Id.* Dr. Summers' findings on physical examination remained unchanged. (Tr. 892.) He "strongly encouraged" Plaintiff to establish care with an orthopedist, and again gave Plaintiff the information to schedule the visit. *Id.* He also strongly advised Plaintiff to contact the general surgeon about a colostomy takedown. *Id.*

In sum, although the ALJ's discussion was brief, she referenced specific examination findings of normal sensation and full strength that appeared inconsistent with a disabling upper extremity impairment. *See Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) ("The ALJ'S brevity is not reversible error."). Additionally, the ALJ discussed Dr. Summers' treatment notes, which reveal Plaintiff saw Dr. Summers on only three occasions to establish care with a primary care physician. Thus, the ALJ adequately addressed supportability.

With regard to consistency, the ALJ cited the findings from Plaintiff's February 2023 consultative examination with Rachel Dibooglu, FNP-C. (Tr. 591, 854.) Plaintiff reported experiencing issues with his right elbow since 2015, with symptoms of difficulty lifting and inability to straighten the arm due to pain. (Tr. 854.) On examination of the upper extremities, Ms. Dibooglu noted weakness and stiffness of the right shoulder, elbow, and wrist; limited range of motion of the right shoulder on forward flexion; limited range of motion of the right elbow on flexion, extension, and supination; and limited range of motion of the right wrist on dorsiflexion and palmar flexion due to elbow pain. (Tr. 856.) Plaintiff's bicep/triceps strength was "mildly weak" at 4/5 due to right elbow pain. *Id.* Ms. Dibooglu noted stiffness and pain in Plaintiff's right hand. *Id.* Plaintiff's grip strength was "mildly weak" at 4/5 on the right due to right elbow pain. *Id.* Ms. Dibooglu found Plaintiff's "fine and gross motor fully intact" bilaterally. *Id.*

The ALJ stated that Ms. Dibooglu's exam revealed right upper extremity deficits, but only mildly weak grip and bicep/triceps deficits, and fully intact fine and gross motor skills. (Tr. 590-91.)

Plaintiff argues that the ALJ erred in relying on Ms. Dibooglu's exam because it occurred over one year before imaging revealed a non-union fracture. This argument is not persuasive, as

Ms. Dibooglu examined Plaintiff after his alleged onset date and her findings are therefore relevant evidence that the ALJ was required to consider. *See* 20 C.F.R. §§ 404.1513a, 416.913a. Moreover, although Plaintiff did not undergo imaging until after Ms. Dibooglu's examination, he reported that his elbow injury occurred in 2015.

Consistent with her fact-finding function, the ALJ weighed the evidence and ultimately found Dr. Summers' opinion that Plaintiff could not use his right upper extremity for any length of time was unpersuasive. *See Bonham v. Bisignano*, 177 F.4th 934, 945 (8th Cir. 2026) (a reviewing court "will not disturb an ALJ's decision merely because there is evidence supporting two inconsistent conclusions.") (quotation omitted). The ALJ adequately explained why she found Dr. Summers' opinion unpersuasive. The ALJ's conclusion that this opinion lacked supportability and consistency was not, therefore, erroneous under 20 C.F.R. § 404.1520c.

**2. State Agency Opinions**

Plaintiff next argues that the ALJ erred in finding the opinions of state agency physicians Drs. Fishburn and Weiss "persuasive," but not adopting significant limitations identified in those opinions.

The new regulations require the ALJ to consider the opinions of state "agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513(b)(1).

On March 9, 2023, Dr. Fishburn provided a Physical Residual Functional Capacity Assessment. (Tr. 626-28.) Dr. Fishburn expressed the opinion that Plaintiff could perform light work but could never crawl; frequently balance; and occasionally climb, stoop, kneel, crawl, and crouch. (Tr. 626-27.) He found that, due to pain and some range of motion limits on the right side, Plaintiff's overhead reaching was limited to occasional on the right and his

lateral reaching was limited to frequent rather than constant on the right. (Tr. 627.) Plaintiff had no limitations in his ability to handle, finger, or feel. *Id.* Dr. Fishburn found that Plaintiff should avoid concentrated exposure to vibration and hazards due to his ostomy and complications from the prolapse. (Tr. 628.)

On May 17, 2023, Dr. Weiss completed a Physical Residual Functional Capacity Assessment, in which he found the same limitations as Dr. Fishburn. (Tr. 634-36.)

The ALJ found these opinions "persuasive," but noted that she was including additional limitations of frequent handling and fingering with the right hand, and no climbing of ladders, ropes, or scaffolds "to better account for the right upper extremity symptoms." (Tr. 591.)

Plaintiff first argues that the ALJ erred in failing to explain why she did not adopt the following limitations found by Drs. Fishburn and Weiss: occasional overhead reaching, crawling restrictions, and hazardous exposure limits. The ALJ in fact found Plaintiff ***was more limited*** than found by Drs. Fishburn and Weiss in those areas due to his right upper extremity symptoms. She therefore limited Plaintiff to ***no*** overhead reaching, ***no*** crawling, and ***no exposure*** to hazards or vibration, rather than the occasional restrictions found by Drs. Fishburn and Weiss. Plaintiff fails to demonstrate prejudice where the ALJ found greater limitations.

Plaintiff next argues that the ALJ erred in finding the opinions of Drs. Fishburn and Weiss persuasive in that they were provided prior to Plaintiff's May 2024 elbow x-rays.

The passage of time will not, on its own, make a medical opinion outdated for the purposes of determining an RFC. *See, e.g. Bollinger o.b.o Bollinger v. Saul*, 2020 WL 4732042, at *3 (E.D. Mo. Aug. 14, 2020) (finding a 2-year-old opinion valid evidence since there was "no objective medical evidence in the record" showing "a marked change in condition"

after the opinion); *Sullins v. Astrue*, 2011 WL 4055943, at *6 (E.D. Mo. Sept. 6, 2011) (finding an opinion covered "a relevant time period" though it was over one-year old).

Here, Drs. Fishburn and Weiss considered the findings from Ms. Dibooglu's consultative examination, including Plaintiff's full bilateral hand dexterity and only mild right upper extremity weakness. (Tr. 628.) Dr. Fishburn also noted that Plaintiff did not obtain regular medical treatment, took no medications, and had no emergency room visits or hospitalizations. *Id.* The state agency opinions were provided less than two years before the ALJ issued her decision, and after Plaintiff's alleged onset of disability date. As such, they were relevant evidence for the ALJ to consider.

Plaintiff accurately points out that the state agency physicians did not see Plaintiff's May 2024 elbow x-rays, which revealed a non-union fracture and chronic osteomyelitis of the distal humerus. (Tr. 891.) Their opinions also pre-dated Plaintiff's orthopedic evaluation with Rebekah Ann Hager, NP, at BJC, on August 30, 2024. (Tr. 982.) At that visit, Plaintiff complained of "30+ years" of right elbow pain since being involved in a bar fight where he ended up at the bottom of a pile-up. *Id.* He wore an elbow brace for comfort. (Tr. 983.) On examination of the right elbow, Ms. Hager noted tenderness, decreased range of motion, and slightly decreased strength of 4/5 of the elbow and wrist, with normal finger extension and flexion strength. *Id.* Ms. Hager noted x-rays revealed "marked irregular appearing distal humerus with advanced arthritis of the elbow joint." *Id.* Ms. Hager's impression was post-traumatic arthritis through the right elbow. *Id.* She recommended Plaintiff take a non-steroidal anti-inflammatory drug or Tylenol for arthritis pain; physical therapy to improve function of the right elbow; and follow up in three months. *Id.*

Although these medical records were created after the state agency physicians' opinions, they do not reveal that Plaintiff's physical health suffered a "marked change in condition," which would affect his RFC. Thus, the Court does not consider the opinions of Drs. Fishburn and Weiss stale. *See Bollinger*, 2020 WL 4732042 at *3. The x-rays and orthopedic evaluation address the same symptoms Plaintiff had during his consultative examination and when the state agency physicians provided their opinions. In fact, Plaintiff reported that he had experienced these symptoms for approximately ***thirty years***. (Tr. 982.) Despite experiencing these symptoms for a prolonged period, Plaintiff had not received any medical treatment, undergone imaging, or taken any medication until after he filed his application for benefits.

Additionally, the ALJ did not ignore these records, as she addressed the entirety of the medical record, including the May 2024 x-rays and Ms. Hager's evaluation. (Tr. 591.)

Thus, the Court finds no error in the ALJ's evaluation of the opinions of the state agency physicians.

**B. RFC Determination**

The ALJ found that Plaintiff could perform light work with the following additional limitations:

> [H]e can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. The claimant can perform occasional balancing on narrow, slippery, or erratically moving surfaces. He can engage in occasional stooping, kneeling, crouching but no crawling. With the right dominant upper extremity, the claimant can engage in frequent reaching in front and laterally, but he cannot perform overhead work. The claimant can engage in frequent fine and gross manipulation with the right dominant upper extremity. The claimant cannot work at unprotected heights or around hazardous machinery, and he cannot perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices.

(Tr. 588.)

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ did not explain how Plaintiff's right elbow impairment is compatible with frequent manipulative use of the dominant right hand. He contends that an RFC assessment must be based on medical evidence, and orthopedic literature consistently shows that an elbow condition like Plaintiff's produces chronic pain and weakness.

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004)); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing *Harris v. Barnhart,* 356 F.3d 926, 931, n.2 (8th Cir. 2004); *see also Bowen v. Yuckert,* 482 U.S. 137, 146, n.5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition)).

The Court bears in mind that it is not its "role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in [the] determination of plaintiff's RFC." *Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (citing *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016)). Rather, it is the ALJ's duty to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotation omitted). "Because a claimant's RFC is a medical question, an ALJ's

assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (cleaned up); *Bonham*, 177 F.4th at 941. The RFC must only include those impairments that are substantially supported by the record as a whole. *Goose v. Apfel,* 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart,* 377 F.3d 892, 897 (8th Cir. 2004).

Plaintiff essentially asks the Court to reweigh the evidence that the ALJ has already reviewed. The ALJ considered Plaintiff's right elbow impairment with non-union of remote fractures to be a severe impairment, reviewed and summarized the records relating to his pain and limitations as discussed above, including medical opinion evidence, and found that light work with limits in reaching, handling, and fingering were sufficient to accommodate this condition.

The ALJ's weighing of the evidence fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion based on the records Plaintiff cited to in opposition. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). *See also Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (holding it is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion); *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (an ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.").

The Court finds that the ALJ properly evaluated Plaintiff's right elbow impairment, and her RFC determination was supported by substantial evidence in the record. The ALJ based her

findings on medical testing performed and specifically cited Plaintiff's normal sensation, full motor strength, fully intact fine and gross motor skills, and only mildly weak grip and bicep/triceps deficits. Notably, the ALJ's RFC determination is *more restrictive* than that of the state agency physicians.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2026.